Phillip WILLIAMS, Plaintiff,

v.

Stephen DEWALT, Warden,
et al Defendants.

Stefan McCray, Plaintiff,

v.

Stephen Dewalt, Warden,
et al Defendants.

Robert John Moes, Plaintiff,

v.

Stephen Dewalt, Warden,
et al Defendants.

John Henry Johnson, Plaintiff,

v.

Stephen Dewalt, Warden, Defendant.

Nos. CIV.A. AW–04–2732, CIV.A. AW–
04–3316, CIV.A. AW–04–3361,
CIV.A. AW–04–3414.

United States District Court,
D. Maryland.

Dec. 29, 2004.

Stefan McCray, Cumberland, MD, pro se.

Robert John Moes, Cumberland, MD, pro se.

Sarah Sargent Gannett, James Wyda, Office of the Federal Public Defender, Baltimore, MD, for Plaintiff.

Neil R. White, Thomas M. Dibiagio, Barbara S. Sale, Office of the United States Attorney, Baltimore, MD, for Defendants.

## MEMORANDUM

WILLIAMS, District Judge.

 Petitioners, inmates confined at the Federal Correctional Institution in Cumberland, Maryland, individually filed the above referenced cases, challenging the Federal Bureau of Prisons' method of computing good time credits. The cases were subsequently consolidated, counsel was appointed for the pro se Petitioners, and a hearing was held.[1] For the reasons set forth herein, the undersigned finds that 18 U.S.C. § 3624(b) is not ambiguous, and that the Federal Bureau of Prisons improperly computes prisoners' good time credits.[2]

### I. The Issue

Petitioners contend that under 18 U.S.C. § 3624(b) they are entitled to earn 54 days of good time credits per year of the sentence imposed. The Bureau of Prisons (BOP), however, awards good time credits based on the amount of time actually served by each inmate, rather than on the basis of the total term of imprisonment imposed. Under the BOP's method of computation, Petitioners (and their fellow

---

1. In *Williams v. Dewalt*, Civil Action No. WDQ–04–2732 (D.Md.2004), the Government argued that the Petition should be dismissed for Petitioner's failure to exhaust administrative remedies. Paper No. 3. Where the available administrative remedies are either unavailable or wholly inappropriate to the relief sought, or where attempts to exhaust administrative remedies would be considered futile, the exhaustion requirement is deemed excepted. *See Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir.1985). Clearly, any effort to exhaust administrative remedies is futile given that the BOP would be unlikely to grant Petitioners relief in contravention of its own published regulations.

2. Given the clarity of the statute, the Court will not address what, if any, deference is due the Bureau of Prisons' interpretation of the statute.

inmates) receive fewer good time credits, and as a result, spend more time in prison.

The "good time credit" statute, 18 U.S.C. § 3624(b) provides, in pertinent part, as follows:

(b) Credit toward service of sentence for satisfactory behavior.

(1) Subject to paragraph (2), a prisoner who is serving a *term of imprisonment* of more than 1 year other than a *term of imprisonment* for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's *term of imprisonment,* beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the *term of imprisonment* shall be prorated and credited within the last six weeks of the sentence.

(2) Notwithstanding any other law, credit awarded under this subsection af- ter the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

(Emphasis added).

The BOP has promulgated a rule and program statement reflecting its interpretation of the statute: "[p]ursuant to 18 U.S.C. §§ 3624(b) ... an inmate earns 54 days credit toward service of sentence (good conduct time credit) *for each year served."* 28 C.F.R. §§ 523.20 (emphasis added). Program Statement 5880.28 depicts a formula addressing the problem of calculating good-time credit on sentences of a year and a day and provides examples of the partial-year proration at the end of a sentence.

The BOP's argument concerning its method of calculating good time credits is best summed up by the Ninth Circuit in *Pacheco–Camacho v. Hood,* 272 F.3d 1266 (9th Cir.2001). That court addressed the BOP's interpretation of the last sentence of § 3624(b)(1) regarding proration of the awarding of good time credits during the final or partial year of a sentence. In upholding the BOP's method for prorating good time credits, the court described the plan as follows: "The regulation consequently prorates the fifty-four days of credit a year earned by the model prisoner to 0.148 day of credit for every actual day served during good behavior (54/365=0.148)." *Id.,* at 1267–68. In multi-year sentences the BOP calculates a projected release date by: 1) awarding up to 54 days of good time credit for every 365 days actually served; 2) deducting the annually awarded good time credits from the end of the sentence; and 3) then applying the 0.148 multiplier in a series of calculations[3] for the remaining sentence when less than one year is left to be served.

---

**3.** The process takes eight steps, shortened by the BOP to the following:

The Petitioners contends this is error. They claim, simply, that the BOP should take the sentence imposed by the court, award 54 days good time credit for each full year of the sentence imposed, and prorate any remaining time with the 0.148 multiplier.

The Fourth Circuit has not yet addressed this issue, although the matter currently is pending before the court in *Yi v. Brooks,* No. 04–6891 (4th Cir.2004).[4] The Sixth, Seventh, and Ninth Circuits have affirmed the method used by the BOP in awarding good time credits. *White v. Scibana,* 390 F.3d 997 (7th Cir. 2004); *Pacheco–Camacho v. Hood,* 272 F.3d 1266, 1268–69 (9th Cir.2001); *Brown v. Hemingway,* 53 Fed.Appx. 338, 339, 2002 WL 31845147 (6th Cir.2002) (unpublished decision); *Williams v. Lamanna,* 20 Fed.Appx. 360, 361, 2001 WL 1136069 (6th Cir.2001) (unpublished decision). These courts each found § 3624(b) to be ambiguous, after giving a cursory nod to the rules of statutory construction and deferring to the agency's interpretation. Several district courts, in unreported decisions, also have upheld the BOP's policy, relying, for the most part, on the analysis first articulated in *Pacheco–Camacho.*

## II. Analysis

 In interpreting a statute, a court must first determine if Congress has spo-

ken on the issue in such a manner that Congressional intent is clear. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Capitol Mortgage, Inc. v. Cuomo,* 222 F.3d 151, 155 (4th Cir.2000). Only if the court decides that question in the negative does the court determine whether the agency's interpretation of the statute "is based on a permissible construction of the statute." *Chevron* 467 U.S. at 843, 104 S.Ct. 2778.

The source of the dispute here lies in the meaning of "term of imprisonment" as used in § 3624(b). The parties agree that "term of imprisonment" in its first two uses within § 3624(b)(1) means "sentence imposed." They dispute its meaning, however, in its third use within that statutory provision, "54 days at the end of each year of the 'prisoner's term of imprisonment'." Petitioners argue that the phrase "term of imprisonment," as used the third time within the statute, means the same thing as it has meant throughout subsection (b), i.e. "sentence imposed." The BOP contends that despite "term of imprisonment" meaning "sentence imposed" in the first half of the subsection, its meaning changes to "time served" in the latter portion of the phrase.

 In determining whether Congress has spoken on the issue, the court

366 x .148 = 54.168 (366 + 54 = 420)
366 - 54 = 312 × .148 = 46.176 (312 + 46 = 358)
366 - 46 = 320 × .148 = 47.36 (320 + 47 = 367)
366 - 47 = 319 × .148 = 47.212 (319 + 47 = 366)
"Thus–319 days actually served plus 47 days of GCT equals 366 days, or a sentence of 1 year and 1 day." P.S. 5880.28
The Court notes that the BOP's programming statement concerning this computation is forty-five pages in length, and requires lengthy mathematical calculations in order to arrive at this computation.

4. In *Yi,* the United States District Court for the Eastern District of Virginia upheld the BOP's policy for computing good time credits, finding that § 3624(b) is ambiguous and deferring to the agency's interpretation of the statute. This court disagrees with that court's analysis. As discussed infra, that court did not adequately address the BOP's inconsistent reading of "term of imprisonment" within the same sentence of § 3624(b) and did not acknowledge the contemporaneous legislative history which referenced the 15% rule.

must consider cannons of statutory construction to determine whether a clear sense of congressional intent can be ascertained before deferring to an agency's interpretation of a statute. *General Dynamics Land Systems, Inc. v. Cline,* 540 U.S. 581, 599, 124 S.Ct. 1236, 1248, 157 L.Ed.2d 1094 (2004). The first step in statutory construction is "examining the statutory language, bearing in mind that [a court] should give effect to the legislative will as expressed in the language." *United States v. Murphy,* 35 F.3d 143, 145 (4th Cir.1994) (citing *K Mart Corp. v. Cartier, Inc.* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). The court must look to "the language [of the statute] itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 342, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

█ "Identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Secretary of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (quoting *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 87, 55 S.Ct. 50, 79 L.Ed. 211 (1934)); *Gustafson v. Alloyd Co.* 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Rather than construing the statute so that the phrase carries the same meaning throughout the subsection, the BOP interprets "term of imprisonment" as "sentence imposed" in its first use in § 3624(b), then as "time served" in its later use in § 3624(b).

"Term of imprisonment" is used three times in the first sentence of the statute. Prisoners sentenced to a "term of imprisonment of more than one year" are eligible to receive good time credit. Clearly the use of the phrase here means sentence imposed by the court. The phrase is next used to disallow those serving a life sentence from earning good time credits: "other than a *term of imprisonment* for the duration of the prisoner's life." Again, term of imprisonment clearly means sentence imposed. The statute further reads that a prisoner "may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's *term of imprisonment,* beginning at the end of the first year of the term..." It is here that despite using the phrase "time served" within the same clause, the BOP contends that term of imprisonment means time served. "Term of imprisonment" is used a final time in § 3624(b) in the last sentence: "Subject to paragraph (2), credit for the last year or portion of a year of the *term of imprisonment* shall be prorated and credited within the last six weeks of the sentence." Once again, there is no dispute that the phrase refers to the sentence imposed. Here, the identical words are used not only in the same statute, but in the same subsection and same sentence, lending support to construction in favor of harmonizing the plain meaning of the statute. *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("[the] presumption that a given term is used to mean the same thing throughout a statute...is surely at its most vigorous when a term is repeated within a given sentence...."). Logically, since "term of imprisonment" means sentence imposed in its first, third, fourth, and fifth usage in subsection (b), it would follow that "term of imprisonment" means sentence imposed in its second usage as well.

Respondents rely on the fact that the statute calls for the awarding of good time credit *after* the first year of imprisonment as supporting their construction that "term of imprisonment" means "time served." The portion of the statute governing when good time credits are to be awarded reads,

"... at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term...." This language does not call for the awarding of good time credits *after* the first year of imprisonment. The use of the phrase "term of imprisonment" can logically be read to harmonize its use with its meaning throughout the statute. Reference to the end of the year may simply refer to the end of the calendar year, or the date on which good conduct credits vest. Such a reading of the statute would permit "term of imprisonment" to continue to carry its normal meaning-sentence imposed.

In drafting § 3624(b), Congress used the phrase "time served" when it meant time served. The use of the phrase "beyond the time served" dictates that prisoners should receive 54 days credit against their term of imprisonment based on 311 days in custody, plus 54 days of good conduct credit "beyond the time served," equaling 365 days—a year of the sentence imposed. Under the BOP's policy, model inmates are only able to earn 47 days of good conduct credits for each year of the sentence imposed. This view of the statute comports with the BOP's own policy for awarding good time credits to inmates serving a term of imprisonment of a year and a day. BOP Policy Statement 5880.28

at 1–44–50 provides the computation for an inmate serving a sentence of a year and a day. Those inmates earn 47 good time credits which are awarded after serving only 319 days of their sentence. Those inmates are not required to serve 365 days before they receive their good time credits.[5] Clearly, *requiring those inmates to serve a full year before awarding good time credits would be nonsensical* as those inmates would, under the BOP's application of the statute, not be entitled to the award of any good time credit until they had served 365 days. The plain reading of the statute does not support the BOP's disparate treatment of inmates serving a 366 day sentence versus those inmates serving multiple year sentences. Additionally, the permitting of proration found in the statute simply acknowledges that not all sentences imposed by the court are in full year terms.

■ Moreover, in interpreting a statute, the words are interpreted "in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Beyond subsection (b), the phrase "term of imprisonment" is also used throughout § 3624 to mean sentence imposed.[6] Like-

---

5. Respondents argue that they are given the authority under § 3624(c) to prorate good time credits during the final year of a sentence, or portion thereof. While this court agrees that inmates sentenced to a year and a day are entitled to the awarding of good time credits, the court is not persuaded by the BOP's argument. Subsection (c) provides that *good time credits are to be prorated on the final year of a sentence, or portion thereof*. In the case of inmates sentenced to 366 days, the plain reading of subsection (c) would allow the awarding of 54 days for the first year of the sentence imposed and a proration on the portion of the final year, i.e. the single day.

6. 18 U.S.C. § 3624(a) Date of release.-A prisoner shall be release by the Bureau of Prisons on the date of the expiration of the prisoner's *term of imprisonment*, less any time credited toward the service of the prisoner's sentence as provided in subsection (b). If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday. (Emphasis added.)

 18 U.S.C. § 3624(c) Pre-release custody.— The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a *term of imprisonment* spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under

wise, throughout the criminal code "term of imprisonment" is used as a term of art to mean sentence imposed, not time served.[7]

■ Given the foregoing, the court finds that the plain reading of the statute, coupled with the application of the rule of intra-statutory consistency, supports the plain reading of the statute that good conduct credits are to be awarded based on the total sentence imposed, rather than on the actual time served.

This understanding of the meaning of the phrase "term of imprisonment" is further bolstered by the history of awarding good time credits to federal inmates as well as § 3624's legislative history. The court finds the language of the statute clear. Were it not, however, the court could resort to the legislative history to ascertain the meaning of the language. *Consumer Product Safety Commission v. GTE Sylvania, Inc.* 447 U.S. 102, 110, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).

The early history of federal good time statutes permitted a model prisoner to serve less, time by receiving credit against "the term of his sentence." 18 U.S.C. § 701 (1944). The "good time" was deducted not from the time served, but from the term of the sentence imposed, in increments which were dependent on the length of the term. In 1948, the statute was amended so that good time was "to be credited as earned and computed month-

ly." The change addressed when the good time credit vested; however, it "was interpreted as requiring good time to be computed on the basis of actual time served rather than on the basis of the term of the sentence as imposed by the court." H.R. Rep. 86–935 (Aug. 18, 1959), reprinted in 1959 U.S.C.C.A.N. at 2519. *See Hunter v. Facchine,* 195 F.2d 1007 (10th Cir.1952). This interpretation required model prisoners to serve longer periods of confinement than they would have under the previous methodology. To remedy this result, Congress deleted the "time served" language and returned to the methodology of crediting good time against the sentence imposed, not actual time served. See H.R. Rep. 86–935 (Aug. 18, 1959), reprinted in 1959 U.S.C.C.A.N. at 2519.

Notwithstanding the foregoing, in determining the meaning of a statute, "the starting point in discerning congressional intent is the existing statutory text...not the predecessor statutes." *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004). In adopting § 3624, Congress adopted the simple language "term of imprisonment" rather than language such as "credited as earned and computed monthly." Congress intended that good time credit be easily calculated. See S. Rep. 98–225, reprinted in 1984 U.S.C.C.A.N. 3329 (describing § 3624 as creating an "easily determined rate"). The formula of 54 multiplied by the number of years in the sentence im-

conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody. (Emphasis added.)

7. *See e.g.* 18 U.S.C. § 3147 ("A term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment."); 18 U.S.C. § 3156(a)(3) (The term "felony" means an offense punishable by a maximum term of imprisonment of more than one year."); 18 U.S.C. § 3582 (discussing "factors to be considered in imposing a term of imprisonment"); 18 U.S.C. § 584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time...."); 28 U.S.C. § 994, *et seq* (Sentencing Reform Act).

posed is a simple manner for calculating good time credits, one which the public, inmates, and the courts can easily compute. Likewise, the proration is subject to a simple mathematical formula: days left/ $365 \times 54$.[8]

Lastly, the history of the statute references Congress's intention that federal inmates be able to reduce their sentence by fifteen percent. In an earlier version of the statute, Congress adopted thirty-six days, "approximately 10%," as the maximum amount of good time credits that could be awarded each year. *Id.* at 3329–30. The final version of the bill added five percent to the maximum amount of good time credits permitted to be earned. *See id.* at 3711 ("Amendment No. 130: Deletes 'thirty-six' as proposed by the House, and inserts in lieu thereof 'fifty-four' as proposed by the Senate **which increases 'good time' that accrues from 10 percent to 15 percent**.") (emphasis added).[9] The BOP's policy requires the most exemplary prisoner serve 87.2% of his sentence, rather than 85% of his sentence as intended by Congress.[10] Given the legislative history of the good time credit statute, it is clear that the BOP has failed to fulfill the prom-

ise made by Congress that exemplary conduct would be rewarded by a reduction of 15% of an inmate's sentence.

Although not controlling in construing a statute, the Court finds persuasive the fact that courts and practitioners have commonly understood that federal inmates are eligible for a reduction of up to 15% percent of their sentence, through the earning of good time credits. *White*, 314 F.Supp.2d at 840 ("[T]he court of appeals has assumed that an inmate may be able to deduct up to 15% of his or her sentence by earning good conduct time. . . ."), citing *United States v. Martin*, 100 F.3d 46, 47 (7th Cir.1996) and *United States v. Prevatte*, 66 F.3d 840, 846 (7th Cir.1995) (Posner, J., concurring).

Indeed even the BOP references the 85% rule in its Security Designation and Custody Classification Manual when describing an inmate's expected length of incarceration:

> MONTHS TO RELEASE: This item shall reflect the estimated number of months the inmate is expected to be incarcerated. . . . Based on the inmate's sentence(s) enter the total number of

---

8. The BOP employs an eight step process in computing the amount of good time credits to be awarded on the sentence of a year and a day. In clear contravention of the plain reading of the statute, Policy Statement 5880.28 states that "it would be impossible to accrue the full 54 days of GCT for a sentence of 1 year and 1 day."

9. Senator Biden, a sponsor of the bill, subsequently stated:
 I was the co-author of that bill. In the Federal courts, if a judge says you are going to go to prison for 10 years, you know you are going to go to prison for at least 85 percent of that time–8.5 years, which is what the law mandates. You can get up to 1.5 years in good time credits, but that is all. And we abolished parole. So you know you'll be in prison for at least 8.5 years.

141 Cong. Rec. S2348–01 (Feb. 9, 1996); see also 140 Cong. Rec. S12, 349 (1994)("So my Republican friends in a compromise we reached on the Senate floor back in November. . .said no State can get any prison money unless they keep their people in jail for 85 percent of the time just like we do at the Federal level in a law written by yours truly and several others.") (statement of Sen. Biden).

10. This difference may seem insignificant at first blush. The difference in the calculation to an inmate, however, is great. Using a ten year sentence as an example, the difference in time to be served by a model inmate under the BOP's interpretation versus the plain reading of the statute amount to an additional seventy days.

months remaining less 15% for sentences over 12 months, and credit for any jail time served.

PS 5100.07 at 5–8. The program statement further states, "[o]ffenders whose offense was on or after November 1, 1987, will be expect to serve approximately 85% of the sentence length, rounded to the nearest whole number." *Id.* at 6–8.

## Conclusion

For all of the foregoing reasons, the Court finds that § 3624(b) is not ambiguous. Good time credits are to be awarded based on the sentence imposed, rather than the time actually served by the inmate. The BOP's policy for calculating the awarding of good time credits is improper and Petitioners are entitled to relief. The BOP shall be directed to recalculate Petitioners' receipt of good time credits. Given that this matter is presently pending before the Fourth Circuit Court of Appeals, the Order accompanying this Memorandum shall be stayed.