RANDOLPH, PRESIDING JUSTICE,
CONCURRING IN PART AND DISSENTING IN PART:
¶71. When taken in isolation, the jury’s question may have been ambiguous. But our precedent requires more. As caselaw is legion, nó citation is required for the principle that when read together and taken as a whole, if the instructions given fairly announce the law of a case, there is no basis for reversible error. Following that undisputed principle, it cannot be fairly argued that in this case, under these circumstances, the trial court erred. Given the facts found in this record, reversal is not mandated.
¶ 72. In today’s appeal, not a single instruction given has been challenged as an incorrect statement of the law. There is nothing in the judge’s response that incorrectly stated the law. He did not enlarge, restrict, or modify any of the instructions given. We can only rely upon what is stated in the transcript and the defendant’s arguments because the physical note bearing the jury’s query and the judge’s response is not part of this record. What are part of this record are the twelve instructions the trial court gave to the jury—nine by the court (C1-C9), two by the State (S1A and S2), and one by the defendant (D2). S1A provided:
S1Á
The Defendant, JAMES DOUGLAS WILLIE, is charged with the crime of Murder.
If you find from the evidence in this case, beyond a reasonable doubt and to the exclusion of evéry other reasonable hypothesis consistent with innocence, that:
1.) The deceased, Thomas Schlender, was a living person; and
2.) On or about May 8, 2012 ... [the Defendant], without authority of law, did shoot with a firearm and kill [Schlender] with the deliberate design to effect the death of [Schlender], then you shall find the Defendant guilty of Murder.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence, then you shall find the Defendant not guilty.
After receiving instructions from the court, during its deliberations, the jury submitted a note to the trial judge, which is not a part of the record before us. According to the transcript, the note asked if the jury could “say [Willie] is guilty of having the gun without saying he is guilty of murder.” According to the transcript, the judge responded by writing, “No.” Again, the judge’s written response is not in the record. Willie argues that the query and re *1291 sponse could be interpreted as allowing the jury to find 'Willie guilty of murder if the jury believed him “guilty” of possessing the gun.
¶73. Whether the judge’s limited response should be considered an additional written instruction, or a simple response to a jury inquiry, is debatable. Whether his response was an additional written instruction or not, it is beyond question that S1A was before the jury and was a sound instruction. Thus, the jury was properly instructed that it could not convict Willie of murder unless it found beyond a reasonable doubt that Willie deliberately shot and killed Schlénder without authority of law. “The jury is presumed 'to have followed the trial court’s instructions.” Galloway v. State, 122 So.3d 614, 634 (Miss. 2013). The jury is presumed to have read the judge’s response in connection with all instructions previously provided. Assuming, arguendo, that the reply was an additional written instruction, and taking all the instructions together, the argument that the jury must have convicted Willie of murder simply upon finding he possessed the gun, without any other element as required by Instruction S1A, is unavailing. Separately, no, the jury could never have found Willie guilty of possession of a gun, as the pseudo-instruction noted (though' not part of the record), for he was never separately charged with that crime. The only crime for which he was charged and tried was murder. See Instruction S1A. Thus the trial judge’s reply did not create reversible error.
¶ 74. As recognized by Justice Coleman, this Court noted that an inquiry from the jury during deliberations is “[o]ne of the most nettlesome problems” faced by our judges, and recognized that “[w]e really cannot lay down hard and fast legal principles to govern the myriad circumstances in which a problem may arise.” Girton v. State, 446 So.2d 570, 572 (Miss. 1984).
In deference we offer some common sense suggestions.
Our first recommendation is that the circuit judge determine whether it is necessary to give any further instruction. Unless it is necessary to give another instruction for clarity or to cover an omission, it is necessary that no further instruction be given.
[[Image here]]
The second recommendation requires the trial judge to constantly bear in mind that justice in every trial requires communication and understanding. Unless words are clearly understood, there is only a communication of sound, or worse, a distinct possibility of the receiver of the information placing a different meaning on what is spoken or written than the author meant. This is critical in any communication from the circuit judge to the jury, or between the judge and jury.
Therefore, a judge should make absolutely certain he understands precisely what is meant in any inquiry from the jury. Unless he is quite certain precisely what the jury means in its inquiry, how can the judge know he is responding properly?
Id. at 572-73. In Girton, a juror sent the following statement to the judge:
To me the State has not proved beyond a reasonable doubt that Mr. Girton was put into a position of having his back to the wall, pushed into a comer and made to take some sort of action to protect his life, family or home. The action he took may not have been proper, but it might have been the only action he felt he could take at the time. Some of the other Jurors tell me I am not following the law as it was laid out for us (And there is what, I believe to be a period) My feel *1292 ings, if I am wrong, please show me at what point I am failing and I could possibly change my opinion.—signed Boyd Goodnight.
Id at 571. The'judge responded as follows:
The State does not have to prove that the acts of the Defendant were reasonable. It is a question of fact for the Jury to determine. The reasonableness of his acts are factual questions. Apply the written instructions to the facts as you determine them to be.
Id, at 572. We noted that, in that case,
the circuit judge may have understood precisely what Juror Goodnight meant. While this Court believes we have some understanding of what was troubling this juror, we must at the same time concede we are not sure.
If the juror was indeed resolving an inquiry on a certain principle of law as appears from this record, and as the circuit judge apparently understood it, the principle of law had already been thoroughly covered in the two previous instructions. Also, as we have noted, we cannot be sure what this juror meant.
Id. at 573. This Court recognized that,
because the meaning of the juror’s inquiry was not completely free from doubt, it would have been preferable for the circuit judge to see that the meaning was unquestionably clear before making a determination whether a response was necessary. Further, even the meaning ascribed by the circuit judge to the inquiry required nothing more than a court direction to follow the instructions.
Id. at 575; Nevertheless, we found no error in the. trial court’s response, as there was “absolutely nothing about either the inquiry or the circuit judge’s response which would induce an otherwise doubtful juror to return a verdict of guilty.” Id.
¶ 75. As so aptly addressed by the well-seasoned and experienced jurists, unanimously accepted and stated in Girton, we should not lay down hard and fast legal principles to govern every circumstance that might give rise to a jury inquiry during deliberations. That Court offered common-sense suggestions, all the time giving due deference to the trial judge. In this case, the judge determined it was necessary to answer the jury’s inquiry. He reached that decision after conferring with both the district attorney and defense counsel. In this case, the judge believed he understood what the jury was asking. The judge and attorneys for the defendant and the State considered the inquiry as regarding a lesser-included offense. The judge’s response was proper in this case—the jury could not find Willie guilty of a crime for which he was not charged and on which it received no instruction. While a better response may have been to simply inform the jury that it had already been properly instructed and to refer to the instructions given, I cannot say that the trial judge abused Ms discretion in responding as he did. See id. at 575, In the words of the Girton Court, while we may “have some understanding of what was troubling this jur[y], we must at the same time concede .we are not sure.” Id. at 573. In any event, there is “absolutely nothing about either the inquiry or the circuit judge’s response which would induce.an otherwise doubtful juror to return a verdict of guilty,” on the charge of deliberate-design murder. See id. at 575. Instruction S1A instructed the jury to find the defendant not guilty if the State failed to prove any one of the listed elements of deliberate-design murder beyond a reasonable doubt. See Instruction S1A (requiring a finding that Willie deliberately shot and killed Schlender without authority of law beyond a reasonable doubt in order to. convict).
*1293 ¶76. Utilizing cases factually dissimilar to the one sub judice is an all-too-common practice. Using pinpoint citations from dissimilar cases violates the prime directive of stare decisis, that “like cases ought to be decided alike.” See State ex rel. Moore v. Molpus, 578 So.2d 624, 634 (Miss. 1991). None of the accessory cases relied upon by Justice Coleman are like cases.
¶ 77. In Berry v. State, the jury was given contradictory instructions, which had been filed and given to the jury before deliberations began. Berry v. State, 728 So.2d 568, 571 (Miss. 1999). One informed the jury of the elements of the underlying crime and the State’s burden of proof. Id. However, another explicitly informed the jury that it could convict the defendant for the underlying crime if the jury found the defendant committed “any act which is an element of the crime” rather than proving all elements of the crime beyond a reasonable doubt. Id. at 570 (emphasis added). Concerning “a nearly identical accessory instruction,” this Court found no reversible error, as other instructions made clear “that the State was required to prove every element of the crime beyond a reasonable doubt,” Id. (citing Simmons v. State, 568 So.2d 1192 (Miss. 1990)). In a case similar to Berry, but not the case sub judice, and acknowledging Simmons, this Court held a trial judge in error for giving this type of accessory instruction. Hornburger v. State, 650 So.2d 510, 515 (Miss. 1995). Yet the Hamburger Court found that error was harmless, given that other instructions informed the jury of the State’s burden to prove each element of the crime beyond a reasonable doubt. Id. Finally, in Liggins v. State (another accessory case unlike today’s), this Court reversed a conviction predicated on an accessory instruction, because the instruction informed the jury that it must convict the defendant if it found the defendant encouraged the commission of a crime and did any act which was an element of that crime. Liggins v. State, 726 So.2d 180, 184 (Miss. 1998).
¶ 78. If the cases cited by Justice Coleman can offer us guidance, it is that each case must be decided on the facts of that case alone, applying the law consistently. Contrary to these accessory-instruction cases, the instructions actually given in this case were not contradictory. It is only when a “spin” is advanced of other possibilities, as argued by the defendant’s able counsel, that error is suggested. The jury was clearly instructed that the State had to prove each and every element of deliberate-design murder beyond a reasonable doubt. When the jury asked if it could convict Willie for possessing a gun without finding him guilty of murder, the trial judge specifically responded with “No,” if we rely on the transcript. The attorneys pointed out during the bench conference that the jury was given no instruction regarding possession of a firearm. The jury asked a yes or no question. Can reasonable jurists not agree that it would have been improper for the judge to have responded in the affirmative?
¶ 79. Justice Coleman correctly concludes that Willie’s failure to object to the judge’s response bars us from reviewing this issue absent plain error,[2] yet then diverts to a plain-error analysis, which I cannot join. Requirements for plain-error analysis have not been met. We cannot say with certainty that “the error prejudiced the outcome of the trial.” See Foster v. State, 148 So.3d 1012, 1018 (Miss. 2014). During the bench conference regarding the jury’s inquiry, the trial judge, defense counsel, and the district attorney all regarded the inquiry as one related to less *1294 er-included offenses. That very well may have been the jury’s inquiry. If the trial court erred in that assessment, it was not “plain, clear, or obvious.” See id.
¶ 80. In this case, there is sufficient evidence to support the jury’s verdict convicting Willie of deliberate-design murder. Faced with record evidence, we cannot say that the verdict “resulted in a manifest miscarriage of justice.” See id. See also Haynes v. State, 934 So.2d 983, 991 (Miss. 2006) (This Court has held “errors involving a violation of an accused’s constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.”).
¶ 81. In sum, reading the judge’s response to the jury’s inquiry in connection with the instructions given results in a clear announcement of the law applicable to this case. The judge’s response did not lessen the State’s burden of proof one iota, nor did it give the jury an “additional option” of “finding Willie guilty of murder if the jury also thought him ‘guilty’ of possessing a gun,” as posited by the defendant and accepted by Justice Coleman’s opinion. Coleman Op. ¶ 35. The judge’s responsé correctly told the jury that it could not find Willie guilty of possessing a gun—a crime with which he was not charged and on which the jury was not instructed. I would find the trial judge’s actions proper. Even if I assumed the trial judge erred, the result would be no different. No error is so “plain, clear, or obvious” as to warrant reversal.
WALLER, C.J., MAXWELL AND BEAM, JJ., JOIN THIS OPINION.

. See Coleman Op, ¶ 28 (citing Fitzpatrick v. State, 175 So.3d 515, 522 (Miss. 2015)).